IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Renee Garrett                                                                Case No. 3:09CV1214

    Plaintiff

    v.                                                                        ORDER

Hewitt Associates, LLC, et al.,

    Defendants

    This is a case for benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. Plaintiff Renee Garrett, a widow, seeks benefits from defendants under her late husband Charles Garrett, Jr. (Charles)'s Jeep Corporation-UAW pension plan (Plan).

    Plaintiff's claims center around her alleged status as a contingent annuitant beneficiary.[1] Plaintiff's contentions appear to be: 1) defendants misinterpreted the Plan in finding that plaintiff was not a contingent annuitant beneficiary; 2) if not, defendants breached their fiduciary duty[2] by

---

[1] Plaintiff's entitlement to benefits under Charles's Plan could arise only from her status as either a surviving spouse or contingent annuitant beneficiary. She, however, concedes "that the plain language of the plan is such that her second marriage to Charles Garrett had not been in existence for the full year immediately preceding his death, and, as such, she is not entitled to benefits by virtue of her status as a *surviving spouse*[.]" [Doc. 17, at 1 (emphasis added)].
Plaintiff thus seeks benefits only as a contingent annuitant beneficiary.

[2] Plaintiff frames this claim as one for "negligence" [Doc. 17, at 2] or "vague[ness]" [Doc. 22, at 1]. Because I find that ERISA preempts any state law causes of action on this issue, I recast it *sua sponte* as an ERISA claim for breach of fiduciary duty. *See, e.g.*, *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) (recasting various state law claims, including negligence, as ERISA breach of fiduciary duty claims, because "[t]hese [state law] claims merely attach new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits").

failing to designate plaintiff as such a beneficiary, as that was Charles's intention; and 3) plaintiff's entitlement to benefits became effective automatically on election, not on retirement.

Pending are defendants' motion for judgment on the administrative record, and motion to dismiss for failure to exhaust administrative remedies. [Docs. 12; 12-1 (containing both motions)].

For the reasons explained below, defendants' motion to dismiss is granted and plaintiff's complaint is dismissed for failure to exhaust her administrative remedies under the Plan.

**Background**

Plaintiff first married Charles in 1978. The couple divorced in August, 2002, but remarried on August 9, 2007. Less than eight months thereafter, Charles died.

Chrysler, LLC (Chrysler) and its precursor employed Charles from May 1, 1978, until his death.

In January, 2008, Chrysler offered some of its employees the opportunity to participate in a retirement program, the Incentive Program for Retirements (IPR). Under the IPR, employees received compensation for voluntarily terminating their employment with Chrysler.

On January 18, 2008, Charles applied to retire under the IPR.

On February 1, 2008, Charles cancelled his retirement application.

On February 2, 2008, Charles reinstated his retirement. Charles chose a retirement date of February 29, 2008, and a benefit commencement date of March 1, 2008.

On February 27, 2008, Charles died.

**I. Applicable Law**

Plaintiff does not clearly articulate the law on which she bases her pending claims. But her use of the term "negligence" suggests that she believes I should assess her claims under Ohio law.

Defendants argue that ERISA provides the correct framework for analysis and preempts any state law claims on the issues plaintiff has raised here.

ERISA expressly "supersede[s] any and all State laws insofar as they . . . *relate to* any employee benefit plan[.]" 29 U.S.C. § 1144(a) (emphasis added). This preemption provision is "to be construed broadly." *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir. 1990).

A law "relates to" an ERISA plan if it "has a connection with or reference to such a plan[.]" *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Only those claims whose effect on an employee benefit plan is "merely tenuous, remote or peripheral are not preempted." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). State law claims which "require[] evaluation of the plan and the parties' performance pursuant to it," meanwhile, are preempted. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 862 (6th Cir. 2007) (internal quotation and citation omitted).

In *McMillan*, *supra*, 913 F.3d at 311, the former wife of a decedent sought to demonstrate her entitlement to ERISA benefits, notwithstanding the existence of a divorce settlement between her and the decedent. The district court analyzed under state law the divorce settlement's effect on the former wife's ERISA entitlement. *Id.* The Sixth Circuit held this was error, *id.* ("The district court appears to have based its decision on state law. This we believe was incorrect."), and assessed a former wife's claim under ERISA, *id.* ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue.").

Like the former wife in *McMillan*, plaintiff here seeks to show entitlement to Plan benefits, or at least defendants' failure to act properly when creating the Plan. Given the broad scope of ERISA preemption, I find that such claims "relate to" Charles's Plan. 29 U.S.C. § 1144(a).

3

Plaintiff must therefore base her claims on ERISA, not state law, as the latter are preempted.

## II. Exhaustion of Administrative Remedies

ERISA requires that a Plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying his claim." 29 U.S.C. § 1133. The Sixth Circuit has explained: "The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies [under his or her Plan] prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). This exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (internal quotation and citation omitted).

Exhaustion is not required, however, "where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). To establish futility, a plaintiff must show that "it is certain that his claim will be denied on [administrative] appeal, not merely that he doubts that an appeal will result in a different decision." *Id.* (internal quotation and citation omitted). Plaintiff must demonstrate futility through a "clear and positive indication." *Id.*

In *Constantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994), the Sixth Circuit reviewed a district court's holding that the plaintiffs in that ERISA case needed not exhaust their administrative remedies, because doing so would be futile. The court in *Constantino* noted that plaintiffs attacked the "*legality* of [defendant]'s amended Plan, not . . . a mere *interpretation* of it," and also challenged the constitutionality of a Plan-related statute. *Id.* Because federal court is

4

the proper forum for such challenges, and because "the factual record is already well assembled," the Sixth Circuit affirmed the district court's finding of futility. *Id.*

Drawing on *Fallick* and *Constantino*, I find three factors relevant to assessing whether plaintiff must exhaust her administrative procedures: 1) the nature of plaintiff's claims, *Constantino*, *supra*, 13 F.3d at 975; 2) the development of the administrative record, *id.*; and 3) the degree of administrative review sought thus far, *Fallick*, *supra*, 162 F.3d at 419.

### A. Nature of Claims

The court in *Constantino* found exhaustion futile where the plaintiffs' arguments focused on the legality or constitutionality of an ERISA plan. 13 F.3d at 975; *see also Durand v. Hanover Ins. Group*, 560 F.3d 436, 439-40 (6th Cir. 2009) (finding exhaustion futile where plaintiff attacked legality of ERISA plan's methodology).

Unlike the plaintiffs in *Constantino* or *Durand*, plaintiff here does not attack the legality or constitutionality of the Plan, but rather seeks benefits under it. This is therefore the sort of argument best posed in the first instance to the Plan Administrator, not to me. *Constantino*, *supra*, 13 F.3d at 975.

The nature of plaintiff's claims thus militates against finding exhaustion futile.

### B. Development of the Record

The court in *Constantino* also relied on the fullness of the administrative record in finding exhaustion not required. *Id.*; *see also Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 723 (6th Cir. 2005) ("Given the fact-intensive nature of Plaintiffs' claims for individual benefits, requiring exhaustion of these claims would best promote judicial efficiency by allowing [defendant], who has more experience in interpreting the Program documents, to make an initial coverage

decision and to enable the creation of an administrative record which can then be reviewed by the courts[.]").

Here, by contrast, the record before me is spotty at best. Plaintiff alleges that defendants did not process Charles's retirement papers promptly, such that Charles died "without signing the proper retirement papers." [Doc. 7, at 2]. I remain in the dark about which papers Charles did not sign and defendants did not process, and whether defendants in fact did not process any relevant papers.

Plaintiff, moreover, has yet to connect these allegations to the issue of her designation as a contingent annuitant beneficiary. Attempting to survive dismissal on the administrative record, she references "witness testimony" [Doc. 17, at 2] and "extrinsic evidence" [Doc. 22, at 1] that would support her claims, but her submissions to me conspicuously lack any supporting affidavits or other such evidence.[3]

Even in parsing the administrative record, I have found little to clarify the issues. The record contains only two documents arguably relevant to plaintiff's remaining contentions.

First, Charles's February 2, 2008, retirement form [Doc. 12-7, at 27] is pertinent to plaintiff's claims. On that form, Charles wrote an "X" in the box adding a "Spouse" for "All Plans." [Doc. 12-

---

[3] Even had plaintiff submitted extrinsic evidence, I would be unable to consider such evidence at this point.

The Sixth Circuit has stated: "As to the merits of [an ERISA] action, . . . [t]he district court . . . may not admit or consider any evidence not presented to the administrator." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)).

I may, however, consider extrinsic evidence so long as "that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process[.]" *Id.*

Because the Plan Administrator has not yet decided plaintiff's claims, see Part II.C, *infra*, plaintiff cannot challenge the Administrator's decision procedurally, and I can thus consider no extrinsic evidence in assessing plaintiff's claims.

7, at 27]. He also made a mark – "\" – in the box adding a "Contingent Annuitant" for his "UAW" plan. [*Id.*]. He wrote plaintiff's name and information in the space provided for a "Spouse," and left the "Contingent Annuitant" information section blank. [*Id.*]. These conflicting indications create confusion as to Charles's intentions or Chrysler's beneficiary designation of plaintiff.

Second, Benefit Express's letter to plaintiff [Doc. 12-5, at 3] is also possibly pertinent. That letter states summarily: "Because you and your spouse were married less than one year at the time of your spouse's death, you are not eligible for pension benefits under the provisions of the Chrysler pension plan[.]" [Doc. 12-5, at 3]. There is no evidence that Benefit Express considered the possibility that plaintiff would qualify for a pension as a contingent annuitant beneficiary, or that defendants appreciated plaintiff's argument regarding improper processing of pension documents.[4]

Several other documents in the record provide information as to what benefits plaintiff would receive were she a contingent annuitant beneficiary, see Doc. 12-6, at 34-36, 41-44; Doc. 12-7, at 29-57, but these documents do not speak to *whether* plaintiff is such a beneficiary.[5]

The record thus seems glaringly underdeveloped. Because development of the factual record is one of the key motivations for the exhaustion requirement, *Constantino*, *supra*, 13 F.3d at 975, this underdevelopment also militates against finding exhaustion futile.

---

[4] I, moreover, later address a separate, but very significant, issue with this letter: namely, that Benefit Express has no authority to interpret plaintiff's benefits under the Plan. *See* Part II.C, *infra*.

[5] I note parenthetically, however, that were plaintiff to produce for the Plan Administrator a *signed and initialed version* of the Pension Election Form [Doc. 12-6, at 41-44], that would seem to be extremely probative evidence on the issue.

### C. Administrative Review

Finally, the court in *Fallick* stated that, to establish futility, a plaintiff must show that administrative appeal under the Plan would result in a denial. 162 F.3d at 419.

In a situation analogous to plaintiff's here, the Sixth Circuit held that exhaustion was not futile because a plaintiff never pursued a hearing before the Plan Administrator. *Smith v. Local No. 25 Iron Workers' Pension Plan*, 99 F. App'x 695, 699-700 (6th Cir. 2004) (unpublished disposition). Assessing futility, the court in *Smith* rejected the adequacy of two letters sent to the plaintiff from the pension fund attorney, including one stating that the Plan Administrator denied his claim after "a thorough and careful review." *Id.* at 699. In so holding, the court noted that neither of the letters "indicate[s] that it is certain that, *after a hearing*, the Board would have denied his claim for benefits." *Id.*

As in *Smith*, plaintiff here cannot demonstrate that the Plan Administrator would have denied her claim. As defendants point out: "Plaintiff made no attempt to exhaust her administrative remedies. Indeed, Plaintiff never even submitted a claim to the Board of Administration. Rather, upon receiving a notification from Benefit Express that she was not eligible for a pension, Plaintiff initiated this action." [Doc. 12-1, at 16].

Defendants are correct. The only opinion plaintiff has received regarding her eligibility was a letter from Benefit Express. [Doc. 12-5, at 3].

The Plan, however, expressly designates the Board of Administration (Board)[6] as the Plan Administrator: "The Board of Administration shall have discretionary authority to interpret the Plan

---

[6] The Plan defines the Board as "consisting of 6 members: 3 shall be appointed by [Chrysler] . . . ; 2 shall be appointed by the [local] Union and one by the International Union, UAW[.]" [Doc. 12-3, at 47].

8

and determine eligibility and the amount of benefits in accordance with the terms of this Pension Plan." [Doc. 12-3, at 47]. The Plan, moreover, explicitly specifies that Chrysler "will administer the Plan and the benefits under the Plan within the limits imposed on it by this Article VII[.]" [*Id.* at 48].

Benefit Express is not the Board. *See, e.g.*, Doc. 12-5, at 9 (distinguishing between the Board and Benefit Express). Defendants state as much in the section of their brief cited above. [Doc. 12-1, at 16]. Benefit Express, therefore, is not the Plan Administrator of Charles's Plan, and its interpretation of the Plan does not constitute a binding determination of plaintiff's right to benefits under the Plan.

The entity most qualified – indeed the *only* entity qualified – to determine eligibility under the Plan, the Board, has yet to opine on plaintiff's entitlement to benefits as a contingent annuitant beneficiary or otherwise. The Board is better qualified than me to make this determination in the first instance, and the law requires me to allow the Board to adjudge plaintiff's claims before I may do so.

I therefore find that plaintiff's exhaustion of administrative remedies would not be futile, and I dismiss this case because of plaintiff's failure to exhaust such remedies.[7]

---

[7] Although defendants have not explicitly argued waiver – and have formally argued the opposite [Doc. 12-1, at 12-13] – they have insinuated in their briefs and telephonic conferences that they might be inclined to waive exhaustion. I thus find it appropriate to address whether defendants may waive the exhaustion requirement in an ERISA case.

While cases decided in other contexts allow the government to waive exhaustion of administrative remedies, see, e.g., *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975) (holding an agency may waive internal exhaustion requirements); *Harris v. Lafler*, 533 F.3d 1028, 1032 (6th Cir. 2009) ("The exhaustion requirement does not define the subject-matter jurisdiction of the federal courts." (internal citation omitted)), at least some courts assessing exhaustion in the context of ERISA have not. *E.g.*, *McGraw v. Prudential Ins. Co.*, 137 F.3d 1253, 1264 (10th Cir. 1998) (internal quotation and citation omitted). These courts have instead permitted a district court to bypass exhaustion "only where resort to administrative remedies would be clearly useless [or futile]." *Id.*

The rationale for this departure from the general rule permitting waiver is that "[a]ny other

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion to dismiss [Docs. 12; 12-1] be, and the same hereby is, granted because of plaintiff's failure to exhaust her administrative remedies under the Plan.[8]

So ordered.

s/James G. Carr<br>
James G. Carr<br>
United States District Judge

---

procedure would permit premature judicial interference and would impede those internal processes which result in a completed record of decision making for a court to review." *Lewis v. U.F.C.W. Dist. Union Local Two & Employers Pension Fund*, 273 F. App'x 765, 768 (10th Cir. 2008) (unpublished disposition) (quoting *McGraw*, *supra*, 137 F.3d at 1263). Moreover, this approach "is necessary to keep from turning every ERISA action, literally, into a federal case." *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1190 (10th Cir. 1999) (internal quotation and citation omitted).

The Sixth Circuit, meanwhile, has not directly answered this question, but has framed the general issue in terms of the district court's discretion: "The application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court[.]" *Fallick*, *supra*, 162 F.3d at 418; *see also id.* at 419 ("ERISA's administrative exhaustion requirement for claims brought under [29 U.S.C. § 1132(a)(2)] is applied as a matter of judicial discretion[.]").

In any case, that is a distinction without a difference here. Whether or not I may permit defendants to waive the exhaustion requirement, I certainly am not required to do so. *Id.* Thus, to the extent defendants would desire to waive exhaustion, I decline to permit them to do so here.

[8] My order is limited to dismissing plaintiff's complaint on this ground. I do not, however, grant defendants' motion for judgment based on the administrative record. [Docs. 12; 12-1]. That motion is denied as moot.